HENRY S. WIMBERLY, plaintiff in error, *vs.* R. A. BROWN *et al.*, defendants in error.

Where A, as administrator of C, filed his bill of interpleader, in which he alleged his intestate left property to which he held bond for titles from Collier, that the property had been sold and the fund arising therefrom is claimed by several persons who allege their priorities, who were made parties, and on the hearing it appeared that one of the claimants held a judgment lien against the vendor, and the main question was whether a transferee of the notes given for the purchase-money by such vendor was entitled to priority over said judgment, etc. :

*Held*, Under the facts in this case, the verdict of the jury, decreeing a good title to the purchaser upon his full compliance with the terms of sale, and in favor of the administrator for his actual expenditures upon the property, and for administration fees and reasonable counsel fees, was correct. But it was error to apply the balance of the proceeds arising from the purchase-money to the payment of the notes transferred by the vendor in preference to the judgment lien against such vendor; and we direct the decree to be so entered as to apply the balance first to the payment of such judgment lien.

Lien of Judgments and of Vendors. Before Judge CLARK. Dougherty Superior Court. June, 1870.

So much of this proceeding as is needful for an understanding of the opinion, is as follows: Cargile filed his bill containing the following averments: In January, 1865, S. S. Crawford died in said county, intestate, and, in default of other administration, it was cast upon him, he being Clerk of the Superior Court. His household furniture, etc., were assigned to the widow for her year's support, and $200 00 was assigned to her in lieu of dower. Crawford left no other property but a house and lot in Albany. He had continuously occupied said premises since 1858, and Cargile did not doubt that they were his, though he could find no writing showing his title thereto. The premises needed repairing to fit them for sale, etc., and Cargile advanced the money to make these repairs. The rent of the property, *ad interim*,

had partly repaid these outlays, leaving a balance of say,
$121 00 due Cargile.

When Cargile was about procuring an order to sell said
property to pay Crawford's debts, he was informed that Col-
lier had sold said land to Crawford, giving him a bond for
titles, and taking his notes for the price. But he could find
no bond, and Collier says he has lost the note. He agreed
with Collier that he would establish the bond for titles, and
that Collier should establish the note, that he would sell the
land and first pay Collier the sum due him for balance of
purchase-money, so that the purchaser at the administrator's
sale would get a good title. Accordingly, Cargile sold said
land in May, 1867, at regular administrator's sale for one-
half cash and the balance on credit. Brown bid off the land
at $1,000 00, gave his draft on Rust & Johnson for $500 00,
which they accepted, and gave his note for $500 00, with
Rust & Johnson as security, in compliance with his bid.
But Collier now claims $750 00 as balance due on his notes
for purchase-money, whereas Cargile had understood the
amount to be but about $200 00. Because Cargile will not
consent to pay the $750 00 Collier will not make a deed to
the land, and because he will not, Rust & Johnson and
Brown refuse to pay said draft and note. They also refuse
to pay Cargile because Wimberly claims a lien on said land.
In 1856 or 1857, Wimberly obtained a judgment at com-
mon law against Collier, from which Collier appealed, pend-
ing which appeal Collier sold said land to Crawford. Wim-
berly obtained a final judgment in said cause in December,
1866, against Collier, and now claims that said land is subject
to the lien of said judgment. This judgment is for more
than the house and lot are worth. Cargile claims that the
Statute of limitations protects the land from that lien. Besides,
one Chafin has a small judgment, obtained in April, 1866,
DeGraffenried holds another, obtained in January 1861, and
Fears another obtained in 1860, all against Crawford. Craw-
ford also owes other debts not in judgment. Because of the

insolvency of the estate and the difficulty presented by said facts, he prayed that all of said parties be made defendants to the bill, that the exact amount due to Collier be ascertained, that Brown and Rust & Johnson be decreed to pay that sum, and thus make the title in Brown good, that the lien against Collier be decreed never to be a lien on these premises, and that the balance of the fund be appropriated according to law, *first* paying his expenses of administration, and the attorney's fees for this bill.

On the trial, Cargile testified to his claims as set forth in the bill. The record, and judgment of Wimberly against Collier was shown, as stated. Mr. Oliver then testified that he held a note in favor of DeGraffenreid, against Collier, and Collier gave him Crawford's note for $750 00 for said purchase-money, as collateral security therefor, instructing. him to collect this note from Crawford, pay Collier's note to De-Graffenreid, and send him, Collier, the balance of Crawford's note. Wimberly's counsel objected to this evidence, upon the ground that Wimberly's lien was older than Collier's sale to Crawford, and that no contract made by Collier, after said lien attached, could affect said lien. The objection was overruled.

All other questions being waived, and no issues of *fact* existing as to the *mode* of distribution, the Court was asked to instruct the jury how to find. He instructed them to pay the administrator and the attorney's fees, then pay Collier's balance of purchase-money to DeGraffenreid, till his debt was paid, and the remainder to Collier, and the surplus to Crawford's children, who had claimed it, under the Homestead Act. To raise this fund, Brown's obligations were to be paid, and Cargile was to make Brown a title, and Wimberly's *fi. fa.* was to be perpetually enjoined. The decree was taken accordingly.

Wimberly's counsel excepted to said directions, and assigns them as error.

H. MORGAN, for plaintiff in error.

G. J. WRIGHT, for defendants.

LOCHRANE, C. J.

This was a bill brought by Cargile, as administrator of Crawford, showing that his intestate left property in the city of Albany, to which it appeared he held bond for title from one N. W. Collier, for which his notes were outstanding. The property was sold at administrator's sale, and was purchased by Brown, who complied with the terms of the sale, and the fund now due and arising from such sale is the subject matter of this controversy. The notes outstanding for the purchase-money are about $700 00, and it further appears that Wimberly, the plaintiff in error, claims a lien of judgment obtained at common law, in 1856 or 1857, upon which an appeal has been entered, and final judgment obtained against said Collier. The bill makes the various creditors, of whom there are outstanding many and for various amounts, parties, requiring them to come into Court and adjudicate their said claims according to their priorities. The bill also alleges certain amounts due to the administrator for actual expenses paid out upon the property, and prays a perpetual injunction against the inforcement of Wimberly's *fi. fa.*, upon the ground that Collier had aliened a large amount of other property since the sale of the property in dispute. Upon the final hearing of the case, the jury found a decretal verdict requiring Brown to pay the purchase-money and interest; also, decreed the payment of the amount due the administrator for expenses and such compensation as he was entitled to, as such administrator, first to be discharged out of said fund; next, that he be paid his reasonable expenses for counsel fees in and about the litigation, and that the balance be paid to the notes for the purchase-money, and then to the *fi. fa.* in favor of Wimberly.

In the opinion we entertain of this case, we hold that the verdict of the jury under the facts was correct, in part, so far as it found in favor of decreeing a title to Brown to the premises in dispute upon his compliance with the terms of sale, and upon full payment of the principal and interest due to the administrator; and also in finding that the amounts due to such administrator for his expenditures, administration fees, and reasonable attorney's fees, to be fixed by the Court, be paid; but the Court erred in sustaining such verdict applying the balance of the proceeds of the sale to the notes due Collier as a priority over the lien of the judgment held by Wimberly. And we direct that the decree in this case be so moulded as to pay the balance over to the extinguishment of this *fi. fa.* The lien of this judgment at common law, pending the appeal attached to all property belonging to Collier at the time of its rendition, so far as to prevent its alienation. And inasmuch as the title remained in Collier, his transfer of the notes due for the purchase-money did not give such note by such transfer as collaterals, a priority over such judgment fixed by its rendition at common law. As to the rights or equities in the alienation of other property by Collier, we are not called upon to decide, as such purchasers are not parties to this bill, and their respective rights not in controversy before us. In the case made, the lien of judgment upon this property, held under bonds for titles by Crawford, was not displaced by the sale of Collier to Crawford, nor could it give to the notes given for the purchase-money a priority over such lien of judgment.

Judgment affirmed.